UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

Didar Singh,

       Debtor.
-----------------------------------------------------------X
In re:

Sarbjit Kaur,

       Debtor.
-----------------------------------------------------------X

          Chapter 13
          Case No.: 17-70680-ast

          Chapter 13
          Case No.: 17-71003-ast

## DECISION AND ORDER SUSTAINING CLAIM OBJECTIONS
## FOR PURPOSES OF DETERMINING CHAPTER 13 ELIGIBILITY

*Issues Pending and Summary of Decision*

  Pending before the Court are motions filed by Didar Singh ("Singh") and Sarbjit Kaur ("Kaur")(collectively, "Debtors") concerning proofs of claim filed by First Jersey Credit Union ("First Jersey"). Debtors are each guarantors of loans made by First Jersey to corporate entities in which Debtors each own interests. Debtors filed bankruptcy approximately two weeks apart. Each Debtor's sole request is that this Court determine that the claim filed by First Jersey in their respective cases "is a contingent and unliquidated claim as such terms are defined in 11 U.S.C. Section 109(e) and should not be included in the calculations of the debtor's debt limits under Section 109(e)…."[1] Because the Singh-guaranteed loans were clearly not in default at his petition date, First Jersey's guaranty rights were contingent and, as such, do not give rise to a noncontingent claim as defined by the Bankruptcy Code as to Singh. While First Jersey asserts that Singh's bankruptcy filing constituted a default under at least one of the First Jersey loans,

---

[1] *See* Affirmation in Support by Richard S. Feinsilver. [case no. 17-70680-ast Doc 18]; [ case no. 17-71003-ast Doc 15]

1

which in turn constituted a default under Kaur's guaranty triggering prepetition liability under his guaranty, First Jersey has failed to establish that its claim arising from Kaur's guaranty was in fact noncontingent. The Court has also determined, however, that First Jersey's claims were liquidated at each Debtor's petition date. Thus, First Jersey's claims do not count for determining either Debtor's eligibility to proceed under chapter 13.

*Jurisdiction and Venue*

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

*Findings of Fact and Conclusions of Law*

This decision constitutes the Court's findings of fact and conclusions of law as required by Rule 7052 and Rule 9014(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

*Background*

The following background facts are drawn from the stipulated facts submitted by the parties and the uncontested loan documents executed among them. [case no. 17-70680; dkt item 25]; [case no. 17-71003; dkt item 22]

From on or before May 13, 2013, to the present, Cheema Trans. Corp. ("Cheema") has been the owner of New York City Taxi Medallion numbers 9P35 and 9P36.

On May 13, 2013, First Jersey loaned Cheema the principal sum of $1,700,000.00 (the "Cheema Loan").

Pursuant to the Cheema Loan, an event of default occurs "with respect to any Borrower,

indorser or guarantor of the indebtedness evidenced by this Note [if]….(iii) any of them shall commence any case, proceeding or other action under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have an order for relief entered with respect to any of them; or seeking to adjudicate any of them a bankrupt or insolvent,…"[2]

Debtors each executed personal guarantees in favor of First Jersey for the Cheema Loan. The guarantees provide:

> 4. Certain Rights and Obligations.
> …
> (b) If any default shall be made in the payment of any Indebtedness, Guarantor hereby agrees to pay the same in full: … (ii) without requiring … notice of non-payment or notice of default to Guarantor, to Borrower or to any other person;…(iv) without requiring Lender to resort first to Borrower (this being a guaranty of payment and not of collection)…[3]

From on or before May 15, 2013 to the present, MDAMRIT Taxi Inc. ("MD") has been the owner of New York City Taxi Medallion numbers 8H29 and 8H30.

On May 15, 2013, First Jersey loaned MD the principal sum of $1,700,000.00 (the "MD Loan" and together with the Cheema Loan, the "Loans"). Singh executed a personal guarantee in favor of First Jersey for the MD Loan.

Each of the Loans was for a term of 48 months.

All Loan payments due and payable by Cheema and MD respectively to First Jersey from July 1, 2013 to the date of each Debtor's petition date were paid in a timely manner by Cheema and MD respectively.

All regular monthly payments on the Loans were remitted by Cheema and MD respectively and not by any other parties.

---

[2] *See* First Jersey Opposition to Debtor's Claim Objection, Exhibit A.  [case no. 17-70680; dkt item 20]; [case no. 17-71003; dkt item 17]
[3] *Id*.

3

At all times from May 2013 to each Debtor's petition date, each of the respective taxi medallions owned by Cheema and MD have remained in the possession of Cheema and MD.

***Debtors' Bankruptcy Cases and Motions***

On February 7, 2017, Singh filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code")[4], and was assigned case number 17-70680. In his petition, Singh lists First Jersey as an unsecured creditor with a contingent and unliquidated claim in unknown amount.

On February 22, 2017, Kaur filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code, and was assigned case number 17-71003. In his petition, Kaur lists First Jersey as an unsecured creditor in an unknown amount as a "Possible Contingent Liability – Guarantee of Business Debt".

On March 8, 2017, First Jersey filed a proof of claim against Singh in the amount of $3,233,233.46 as an unsecured claim based on Singh's personal guarantees of the Loans (the "Singh Claim").

On March 8, 2017, First Jersey filed a proof of claim against Kaur in the amount of $1,619,556.51 as an unsecured claim based on Kaur's personal guarantee of the Cheema Loan (the "Kaur Claim").

On April 10, 2017, at the Section 341 meeting of Singh, he testified that an individual taxi medallion was valued at approximately $250,000.

On April 12, 2017, Singh filed a motion seeking an order that the Singh Claim 1) is contingent and unliquidated; and 2) cannot be allowed to determine Singh's eligibility as a chapter 13 debtor pursuant to 11 U.S.C. Section 109(e) (the "Singh Motion"). [case no. 17-

---

[4] Unless otherwise indicated, all statutory references herein are to the Bankruptcy Code.

4

70680; dkt item 18]

On April 13, 2017, Kaur filed a motion seeking an order that the Kaur Claim 1) is contingent and unliquidated; and 2) cannot be allowed to determine Kaur's eligibility as a chapter 13 debtor pursuant to 11 U.S.C. Section 109(e) (the "Kaur Motion" and together with the Singh Motion, the "Motions"). [case no. 17-71003; dkt item 15]

On May 5, 2017, First Jersey filed an objection to the Singh Motion (the "Singh Objection"). [case no. 17-70680; dkt item 20]

On May 5, 2017, First Jersey filed an objection to the Kaur Motion (the "Kaur Objection" and together with the Singh Objection, the "Objections"). [case no. 17-71003; dkt item 17] On June 9, 2017, First Jersey filed a supplemental objection to the Singh and Kaur Motions. [case no. 17-70680; dkt item 23]; [case no. 17-71003; dkt item 20] On June 13, 2017, the Court held a hearing on the Motions and Objections and directed the parties to file a joint statement of undisputed facts by June 30, 2017.

On June 28, 2017, the parties filed joint statements of undisputed facts. [case no. 17-70680; dkt item 25]; [case no. 17-71003; dkt item 22]

On July 13, 2017, the Court held an adjourned hearing on the Motions, at the conclusion of which the Court stated it would issue a briefing schedule concerning the Motions.

On July 21, 2017, the Court issued its Order Regarding Briefing Schedule, providing that by no later than August 3, 2017, Debtors shall file any briefs in support of their Motions, that by no later than August 24, 2017, First Jersey shall file any responses to Debtors' briefs, and that by no later than September 7, 2017, Debtors shall file any replies to First Jersey's responses. [case no. 17-70680; dkt item 26]; [case no. 17-71003; dkt item 23]

On July 25, 2017, Debtors and First Jersey filed a joint letter waiving any further

briefing.  [case no. 17-70680; dkt item 28]; [case no. 17-71003; dkt item 25]

*Analysis*

For cases commenced on or after April 1, 2016, to be eligible for relief under Chapter 13 of the Bankruptcy Code, an individual debtor must, on the date of the filing of the petition, have "noncontingent, liquidated, unsecured debts of less than $394,725 and noncontingent, liquidated, secured debts of less than $1,184,200."[5] 11 U.S.C. § 109(e). Thus, only noncontingent and liquidated debts are included when calculating the total amount of unsecured debt for eligibility purposes.

Debtors rely exclusively on Bankruptcy Code Section 109(e) and a handful of cases addressing what is a contingent claim and what is an unliquidated claim for purposes of determining eligibility under chapter 13.  Debtors refer to the guarantees they each executed, but provide no analysis of the terms thereof.  Debtors essentially argue that because Cheema and MD were current on the Loans at each Debtor's petition date, their obligation to pay the Loans under the guarantees had not been triggered and, as such, the personal guarantees are contingent and unliquidated.

First Jersey essentially argues that Singh's bankruptcy filing was an event of default under the Loans that caused the balance of the Loans to become due, and that Singh's personal guarantees of the Loans were thereby triggered, which rendered his personal guarantees noncontingent and liquidated.  Additionally, in regard to Kaur, First Jersey asserts that Singh's bankruptcy filing was a prepetition event of default that caused the balance of the Loans to become due, and, as such, triggered  Kaur's guarantee liability.  However, First Jersey provides no analysis of the terms of the Loans or the guarantees.

---

[5] Dollar amount as adjusted by the Judicial Conference of the United States. *See* Adjustment of Dollar Amounts notes set out under this section and 11 U.S.C.A. § 104.

Because the parties concede that Debtors executed guarantees of payment, not guarantees of collection, and because the parties rely on the decision of Judge Scarcella of this Court in *In re Stebbins*, this Court will limit its analysis to the factual similarities and differences of these cases to *Stebbins*, including the affirmance thereof by the District Court. *In re Stebbins*, No. 8-14-73357-LAS, 2015 WL 792095 (Bankr. E.D.N.Y. Feb. 24, 2015), *aff'd sub nom. Stebbins v. Artificial Horizon, Ltd.*, No. 15-CV-1196 (JFB), 2016 WL 1069077 (E.D.N.Y. Mar. 17, 2016).

In *Stebbins*, Judge Scarcella held that guaranty liability had been triggered prepetition when the primary obligor had defaulted on the guaranteed loan. In affirming, Judge Bianco of the District Court stated:

> A contingent claim is an "obligation[ ] that will become due upon the happening of a future event that was within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created." *Ogle v. Fid. & Deposit Co. of Md.*, 586 F.3d 143, 146 (2d Cir. 2009); (*quoting Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128-29 (2d Cir. 2000)). A debt is contingent when "the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger ... liability." *In re Mazzeo*, 131 F.3d. at 303 (*quoting Brockenbrough v. Commissioner*, 61 B.R. 685, 686 (W.D. Va. 1986)). If the triggering event occurs prepetition, the debt becomes noncontingent as of the petition date. Id. ("'A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event ... [A] creditor's claim is not contingent when the 'triggering event' occurred prior to the filing of the [C]hapter 13 petition.'") Id. (quoting 2 L. King, Collier on Bankruptcy ¶ 109.06[2][b] (15th ed. rev. 1997)).
>
> The Second Circuit has made clear that liability need not be reduced to a judgment in order to cause debt triggered prepetition to become noncontingent as of the petition date. Specifically, the Second Circuit has explained:
>
> Nor, by a future "event," do we refer to a judicial determination as to liability and relief, for a claim may be noncontingent even though it has not been reduced to judgment. Although the creditor's ability to collect the sum due him may depend upon adjudication, that does

7

> not make the debt itself contingent. In broad terms, the concept of contingency involves the nature or origin of liability. More precisely, it relates to the time or circumstances under which the liability arises. In this connection liability does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim.

*Stebbins,* 2016 WL 1069077, at *4–5. (internal quotation marks and citations omitted).

As Judge Stong of this Court stated, the New York Court of Appeals, in discussing the difference between guarantees of payment and collection over 130 years ago, noted as follows:

> The fundamental distinction between a guaranty of payment and one of collection is, that in the first case the guarantor undertakes unconditionally that the debtor will pay, and the creditor may, upon default, proceed directly against the guarantor, without taking any steps to collect of the principal debtor, and the omission or neglect to proceed against him is not (except under special circumstances) any defense to the guarantor; while in the second case the undertaking is that if the demand cannot be collected by legal proceedings the guarantor will pay, and consequently legal proceedings against the principal debtor, and a failure to collect of him by those means are conditions precedent to the liability of the guarantor....

*In re South Side House, LLC*, 470 B.R. 659 (Bankr. E.D.N.Y. 2012), *quoting McMurray v. Noyes*, 72 N.Y. 523, 524-25 (N.Y. Ct. App.1878). Thus, state and federal case law in New York is clear that a prepetition default must occur to trigger liability of a guarantor under a guarantee of payment for such claim to be noncontingent under Section 109(e); however, the time or circumstances under which the liability arises must be demonstrated.

### *Why First Jersey's Claims Against Singh are Contingent*

Here, the default event which would have triggered Singh's liability under his guarantees had not occurred as of his petition date. While each Debtor's guarantee is a guarantee of payment, not collection, each guarantee provides:

    4. Certain Rights and Obligations

> (b) If any default shall be made in the payment of any Indebtedness, Guarantor herby agrees to pay same in full ….

As First Jersey concedes there was no prepetition payment defaults, the Singh guarantees were contingent at his petition date.

To the extent First Jersey relies on the fact of Singh filing bankruptcy as a prepetition event of default which triggered his guaranty liability, that argument is wholly unpersuasive. The filing of a bankruptcy case is not an event which triggers a prefiling default.

Finally, to the extent First Jersey relies on the Loans each maturing postpetition and not being paid as an event of default that is irrelevant as claims are measured as of the petition date. *See generally* Section 502(b), providing for determination of a "claim in lawful currency of the United States as of the date of the filing of the petition…." While this Court may consider post-petition events and developments, it may do so "to the extent (and only to the extent) they shed light on the amount of secured and unsecured debt actually owed by the debtor at the time of the filing of the petition…." *Stebbins*, 2015 WL 792095, at *3.

***Why First Jersey's Claim Against Kaur is Contingent***

As to Kaur, First Jersey states without specific reference to any provisions of the Cheema Loan documents that Singh's bankruptcy filing was an event of default under the Cheema Loan which "triggered liability of the full amount of the Loan against the primary obligor, Cheema, as well as the personal guarantors," including Kaur, and that no notice of default need be given. [case no. 17-71003; dkt item 17]

> It does appear that, pursuant to the Cheema Loan, an event of default occurs:
>
>> with respect to any Borrower, indorser or guarantor of the indebtedness evidenced by this Note [if]….(iii) any of them shall commence any case, proceeding or other action under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have an order for relief entered with respect to

9

> any of them; or seeking to adjudicate any of them a bankrupt or insolvent,…[6]

However, First Jersey provides no analysis of the loan documents supporting its assertion that the bankruptcy proceeding of Singh constituted a nonmonetary event of default which triggered Kaur's liability under his guarantee, and it is not the Court's obligation to construct that argument for the claimant. The provisions of the Kaur guarantee predominantly speak to payment defaults, and First Jersey provides no convincing argument that a payment default existed as of Kaur's petition date. Further, the parties stipulated that "All loan payments due and payable by Cheema to First Jersey from July 1, 2013 to the petition date of the Chapter 13 Petition filed by Kaur were paid in a timely manner by Cheema."[8]

While First Jersey vaguely references the bankruptcy filings as not violating "unenforceable *ipso facto* clauses," it makes no effort to explain this argument and provides no statutory cites or case law to bolster these statements.

Finally, as with Singh, to the extent First Jersey relies on the Cheema Loan maturing postpetition and not being paid as an event of default that is irrelevant as claims are measured as of the petition date. *See generally* Section 502(b); *Stebbins*, 2015 WL 792095, at *3.

***The First Jersey Claims are Liquidated***

While not essential to granting Debtors' Motions, this Court does determine that the First Jersey claims are liquidated within the meaning of Section 109(e). As Judge Bianco and Judge Scarcella determined, the standard for determining whether a claim is liquidated is a rather low threshold:

> "The terms liquidated and unliquidated generally refer to the value of a claim or interest, the size of the corresponding debt, and the

---

[6] *See* First Jersey Opposition to Debtor's Claim Objection, Exhibit A, Cheema Promissory Note. [case no. 17-71003; dkt item 17]
[8] *See* Statement of Agreed Facts. [case no. 17-71003; dkt item 22]

> 'ease with which that value can be ascertained.'" *In re Greenwich Sentry, L.P.*, 534 Fed. App'x. 77, 79 (2d Cir. 2013) (quoting *In re Mazzeo*, 131 F.3d at 304). If a claim's value is "easily ascertainable" it is "generally viewed as liquidated," whereas a value that depends on "a future exercise of discretion" is considered unliquidated. *Id.* "'[C]ourts have generally held that a debt is 'liquidated' ... where the claim is determinable by reference to an agreement or by a simple computation.'" *In re Mazzeo* 131 F.3d. at 304 (quoting 2 L. King, *Collier on Bankruptcy* § 109.06[2][c] (15th ed. rev. 1997) (citing cases)).

*Stebbins*, 2016 WL 1069077, at *6.

Here, the parties do not seem to seriously challenge an approach to liquidating the claims against Debtors as the amount of the Loans' balances less the value of the respective collateral, notwithstanding the fact that they agree Debtors executed guarantees of payment; therefore, the liquidated amounts can be easily calculated as the balances owed on the Loans as of the respective petition dates without deduction for the value of the collateral, or just as easily as the projected deficiency on such Loans. This Court also notes that under either approach, if the claims were also noncontingent, Debtors would not be eligible to proceed in chapter 13 under Section 109(e).

### *Conclusion*

The First Jersey claims are contingent, but are liquidated. Since they are contingent, they do not count for eligibility purposes.

Based on the foregoing, it is hereby

**ORDERED**, that the Motions are granted to the extent that First Jersey's claims do not count under Section 109(e) for purposes of determining Debtors' eligibility under Section 109(e) to be chapter 13 debtors.



Dated: August 4, 2017
Central Islip, New York

_____
**Alan S. Trust**
**United States Bankruptcy Judge**